IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NASIRUDDIN NAYANI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:06-CV-01540-M |
| | § | |
| HORSESHOE ENTERTAINMENT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the Court's Memorandum Opinion and Order dated April 10, 2007, the parties submitted supplemental briefing on whether Plaintiff Nasiruddin Nayani's claims constitute a reconventional demand[1] that should have been asserted in the parties' Louisiana lawsuit, and if so, whether the Court should dismiss the claims based on principles of comity. Having considered the supplemental briefing, and for the reasons stated herein, the Court has determined that it should not dismiss Plaintiff's claims.

**Background Facts**

The Court recounted the facts of the case in its Memorandum Opinion and Order dated April 10, 2007, and incorporates those facts herein. In his supplemental briefing, Nayani informed the Court that the parties executed a Conditional Settlement Agreement in the

---

[1] "Reconventional demand" is the Louisiana term for a counterclaim.

Louisiana state court case on May 1, 2006.[2]  *See* Plaintiff's Response in Opposition to Defendant's Supplemental Briefing, Exhibit 1 to Exhibit H, Affidavit of Aamer Ravji.  Under those terms, the parties agreed to settle and compromise the suit for $20,000.00, subject to the condition that Nayani begin making payments on that amount according to a stipulated payment schedule.  Horseshoe Entertainment retained the right to submit a Confessed Judgment, signed by Nayani, to the Louisiana court for signing and filing if Nayani failed to abide by the payment schedule.

## Discussion

Article 1061 of the Louisiana Code of Civil Procedure governs reconventional demands, both permissive and compulsory.  Article 1061 provides:

> A. The defendant in the principal action may assert in a reconventional demand any causes of action which he may have against the plaintiff in the principal action, even if these two parties are domiciled in the same parish and regardless of connexity between the principal and reconventional demands.
>
> B. The defendant in the principal action, except in an action for divorce under Civil Code Article 102 or 103 or in an action under Civil Code Article 186, shall assert in a reconventional demand all causes of action that he may have against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the principal action.

This statute, particularly the standard in Subsection B that compulsory reconventional demands must "arise out of the transaction or occurrence that is the subject matter of the principal action," closely resembles Federal Rule of Civil Procedure 13, which governs counterclaims.  *See* FED. R.

---

[2] The Court notes a disagreement between the parties regarding whether the Louisiana lawsuit is still pending, given the conditional settlement agreement executed by the parties in this case.  *See* Defendant's Supplemental Briefing at 3, ¶5; Plaintiff's Supplemental Briefing at 4, ¶9.  Since this issue is not determinative, the Court does not reach it.

CIV. P. 13(a) ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it *arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.") (emphasis added). The official commentary to Article 1061 explains that the purpose of the rule is to "prevent[] multiplicity of suits and encourage[] the settlement of all disputes between the parties at one time," and that the "practice has proved satisfactory in federal practice." Official Revision Comments—1960, 2005 Main Volume.

Louisiana courts applying Article 1061 have not defined what the phrase "arise out of the transaction or occurrence" requires and therefore when a reconventional demand is compulsory. However, cases interpreting the statute suggest that something more than some shared facts is required. In *West v. Hilton Hotels Corporation*, 684 So.2d 518 (La. Ct. App. 1996), Mrs. West, who was intoxicated at the time, sustained serious injuries when she was thrown from a golf cart driven by a Hilton employee. The Wests, a married couple, brought claims against Hilton Hotels for its employee's alleged negligent operation of an unsafe vehicle, for the employee's failure to warn of the dangers of a golf cart, and for Hilton Hotel's failing to properly train its employees in handling golf carts. Hilton asserted a reconventional demand against Mr. West "for [his] comparative fault, contribution, indemnity and reasonable damages," alleging that "in the hours before his wife's accident, Mr. West was negligently inattentive to his wife's . . . steadily progressing state of intoxication and due to his apathy, indifference and lack of caring for his wife's well being allowed her to become intoxicated which in turn caused her accident." *Id.* at 519 (internal quotation omitted). The court found that the defendant could assert its claims as a

3

permissive reconventional demand because Article 1061(a) allows claims arising between the parties "regardless of connexity between the principal and reconventional demands." *Id.* at 520. *Cf. Long v. Minton*, 809 So.2d 1242, 1244 (La. Ct. App. 2002) (holding that a defendant's claim for revocation of stock is a compulsory reconventional demand that should have been asserted in consolidated action since both actions arose "from the same transaction or occurrence, i.e., the ownership of certain shares of stock"); *Hy-Octane Invs., Ltd v. G & B Oil Products, Inc.*, 702 So.2d 1057, 1061 (La. Ct. App. 1997) (finding that Hy-Octane's claim for breach of the motor fuel supply agreement arose out of the same contract that G&B asserted was wrongfully terminated in another action and therefore was a compulsory reconventional demand since it "clearly involves the same transaction or occurrence, the contract, that is the subject matter of G & B's suit.").

Given Article 1061's similarity to Federal Rule of Civil Procedure 13, federal cases interpreting Rule 13 are germane to this Court's interpretation of Article 1061. *See Hy-Octane Invs.*, 702 So.2d at 1060 (using federal cases to interpret Article 1061 and explaining that "[w]hen an article of the Louisiana Code of Civil Procedure is based on a federal rule, decisions of the federal courts can be used for guidance."). To determine whether a counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," this circuit has adopted the "logical relationship" test. *Montgomery Elevator Co. v. Bldg. Eng'g Servs. Co., Inc.,* 730 F.2d 377, 380 (5th Cir. 1984). "A logical relationship exists when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendants." *Id.* (internal quotation omitted). In *Montgomery Elevator*, the court held the plaintiff's claim for breach of

4

contract for its service contract with Building Engineering Services Company, Inc. ("BESCO") was not a compulsory counterclaim that was required to have been asserted in a prior premises liability personal injury case. The court found that "[r]esolution of Montgomery's claim here depends only upon interpretation of the terms of its contract with BESCO and is concerned only peripherally with the existence and causes of liability for personal injury." *Id.* at 381.

The Second Circuit, which has also adopted the "logical relationship" test, similarly held that a claim that is only peripherally related to a prior action is not a compulsory counterclaim. In *Jones v. Ford Motor Credit Co.*, 358 F.3d 205 (2d Cir. 2004), putative class plaintiffs alleged race discrimination under the Equal Credit Opportunity Act ("ECOA") against Ford Motor Credit Company. Ford Credit asserted counterclaims and conditional counterclaims against the plaintiffs for amounts due on loan defaults by the class representatives and putative class members. The court noted that while the plaintiffs' claims concerned "Ford Credit's mark-up policy, based on subjective factors, which allegedly resulted in higher finance charges on their purchase contracts than on those of similarly situated White customers , . . . Ford Credit's debt collection counterclaims are related to those purchase contracts, but not to any particular clause or rate." *Id.* at 209. The court found that "the relationship between the counterclaims and the ECOA claim is 'logical' only in the sense that the sale, allegedly on discriminatory credit terms, was the 'but for' cause of the non-payment." *Id.* The court found that this relationship "is not the sort of relationship contemplated by our case law on compulsory counterclaims," and that "[t]he essential facts for proving the counterclaims and the ECOA claim are not so closely related that resolving both sets of issues in one lawsuit would yield judicial efficiency." *Id.* at 209–10.

The Court finds that Nayani's claims, like the claims in *Montgomery Elevator* and *Jones*,

are only peripherally related to the claim that is the subject of the Louisiana lawsuit. As in *Jones*, the underlying debt that is the subject of the Louisiana lawsuit and the subsequently entered judgment in that case, are "but for" causes of the dispute underlying the claims in this case since had Horseshoe not received a judgment in the Louisiana case, which was later set aside when the Louisiana state court judge granted Nayani's motion for new trial in that case, Horseshoe would not have reported the judgment on Nayani's credit report. However, the essential facts for proving the two claims are not so closely related that "resolving both sets of issues in one lawsuit would yield judicial efficiency." *Jones*, 358 F.3d at 210. While the Louisiana lawsuit involves Horseshoe Entertainment's claim for breach of contract regarding Nayani's failure to pay a debt and failure to fulfill a contractual obligation, this case involves Nayani's claims for negligence, gross negligence, negligent misrepresentation, and exemplary damages for Horseshoe Entertainment's alleged wrongful reporting of a null and void default judgment on Nayani's credit report. The Court therefore finds that Nayani's claims do not arise out of the transaction or occurrence that is the subject matter of the Louisiana suit and that Nayani was not required to assert those claims in a reconventional demand in that case.

## **Conclusion**

For the foregoing reasons, the Court finds that it should not dismiss Nayani's claim against Horseshoe as a matter of comity since Nayani's claim is a permissive, not compulsory, reconventional demand under Louisiana law.

**SO ORDERED.**

**DATED**: May 2, 2007.

_____
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**

7